IC

UNITED STATES
DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

RECEIVED

AUG 2 9 2025 PJJ

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| PEDRO DONALDSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No |
| CITY OF CHICAGO, | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| OFFICER JANOWSKI STAR #10396, | ) | 1:25-cv-10410 |
| OFFICER MEHMEDAGIC STAR #5089, | ) | Judge John F. Kness |
| THE EDGE APARTMENTS, | ) | Magistrate Judge Young B. Kim |
| RONALD DUDA, | ) | DIRECT / Cat. 3 |
| Defendants. | ) | |

## COMPLAINT

NOW COMES PEDRO DONALDSON the Plaintiff, *pro se,* and in support of his complaint states as follows:

## INTRODUCTION

1. The Plaintiff was struck by a motorist while riding his bicycle. Chicago Police cited the Plaintiff for riding his bicycle on the sidewalk, conversely, Chicago Police did not cite the motorist for striking the Plaintiff.

2. The Plaintiff alleges that Police did not cite the motorist because of his race White, and if reversed, that if a Black motorist had struck a White cyclist, Chicago Police would have cited the Black motorist.

3. The Plaintiff alleges denial of due process, unequal treatment, and Civil Rights violation against Chicago Police because of his race Black.

4. The Plaintiff alleges negligence against the driver for failure to keep proper look out before exiting from the Edge Apartments parking lot driveway that intersected with the

sidewalk.

5.     The Plaintiff alleges negligence against Chicago Park District for maintaining danger in the premises, by allowing the shrubs to grow and block the view of motorists exiting the Edge Apartments on Sheridan Road

6.     The Plaintiff alleges negligence against Edge @ Sheridan, for maintaining danger in the premises, by designating a parking space that blocks the view of motorists exiting its driveway on Sheridan Road.

## THE PARTIES

7.     Plaintiff Pedro Donaldson (hereafter "Donaldson") is the movant. At all times relevant the Plaintiff was a resident of the City of Chicago, Illinois.

8.     Defendant City of Chicago is a municipal corporation. At all times relevant, City of Chicago was the employer of the individual Defendants who took action described herein.

9.     Defendant Police Officer JANOWSKI Star #10396. At all times relevant was acting within the scope of his agency, service and/or employment with City of Chicago, and at all times relevant acting under color of statute, ordinances, regulations, customs, and usages of the State of Illinois, and at all times relevant acting as a sworn Police Officer employed by the City of Chicago.

10.    Defendant Police Officer MEHMEDAGIC Star #5089. At all times relevant was acting within the scope of his agency, service and/or employment with City of Chicago, and at all times relevant acting under color of statute, ordinances, regulations, customs, and usages of the State of Illinois, and at all times relevant acting as a sworn Police Officer employed by the

2

City of Chicago.

11.     Defendant Chicago Park District. At all times relevant, manages parks, recreation and event facilities, beaches, museums, lagoons, conservatories and gardens throughout Chicago, including Rabbi Herman and Lotte Schaalman Park. Park 517.

12.     Defendant The Edge Apartment, at all times relevant was the owner of Edge @ Sheridan Apartments, and was responsible for the maintenance and upkeep of the apartments, including marking parking spaces in its parking lot that do not block the drivers view of the sidewalk from the driveway.   And to provide Police with footage of the driveway.

13.     Defendant Motorist, at all times relevant had a duty to keep proper look-out for oncoming traffic while exiting the parking lot from the driveway, especially for bicyclists and pedestrians on the sidewalk that intersects the driveway.

## JURISDICTION

14.     This Court has subject matter jurisdiction over the plaintiff's claim of violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1983, for violation of due process and equal protection of the laws.

15.     This Court has supplemental subject matter jurisdiction related state law pursuant to 28 U.S.C. § 1367(a)

## ALLEGATIONS COMMON TO ALL COUNTS

16.     On August 21, 2023, the Plaintiff was riding his bike Eastward on Thorndale Avenue, and made a right turn North onto the sidewalk on Sheridan Road next to Rabbi Herman and Lotte Schaalman Park. Park 517.

17.     The Park is about 30 yards long, and as the Plaintiff rode his bicycle in front of

"The Edge @ Sheridan" ("The Edge") apartment complex, 5910 N. Sheridan Road, a motorist exited The Edge and struck the Plaintiff with his vehicle.

18. The Edge parking entrance is on Sheridan. One arrow points into the parking driveway, similar to one way traffic, and another arrow by the alley points to the exit. So, the motorist should have exited by the ally and not Sheridan.

19. An Ambulance took the Plaintiff to Saint Francis Hospital.

20. Officers Kanowski Star #10396, and Mehmedagic Star #5089, came to Saint Francis Hospital and issued the Plaintiff a ticket for riding his bike on the sidewalk.

21. Officers Kanowski and Mehmedagic did not issue the motorist a ticket because shrubbery from Rabbi Herman and Lotte Schaalman Park blocked the motorist's view, and alleged the motorist was not at fault for striking the Plaintiff.

22. Officers Kanowski and Mehmedagic informed the Plaintiff that they could not find any security cameras for potential video evidence of the accident.

23. Officers Kanowski and Mehmedagic contradicted themselves in the Illinois Traffic Crash Report, and wrote that "The Edge" had a security camera.

24. Officers Kanowski and Mehmedagic failed their due diligence and contact the property manager and secure evidence of the accident from the security cameras.

**COUNT I**
**DUE PROCESS**
**POLICIES, PATTERNS, CUSTOMS, or PRACTICES AGAINST PLAINTIFF**

25. Plaintiff re-alleges and incorporates ¶'s 1-24, as ¶ 25 of this count.

26. Officer Kanowski, and Officer Mehmedagic, cited Donaldson for riding his bike

4

on the sidewalk, conversely, Police did not cite the motorist for sending him to hospital by striking the bicyclist with his vehicle.

27.     Officer Kanowski and Officer Mehmedagic went to Saint Francis Hospital to deliver Donaldson his ticket, and told him the motorist was not at fault for striking him with the front of his vehicle.

28.     Officer Kanowski and Officer Mehmedagic went to the Hospital, and after Donaldson asked if there were any cameras in the area, they told him no. But there was a camera in the front of the Edge Apartments.

29.     Officer Kanowski and Officer Mehmedagic stated in the report that they had asked the Edge Apartments for footage of the accident, and were inform to return when the owner was present, but the Police Officers never returned.

## MONELL

30.     Police have a policy, pattern, custom or practice of refusing the Plaintiff due process of law, when he asks police for help, by refusing his request to make a: 1) Police Report; 2) an investigation; 3) an arrest; 4) a jailing, or; 5) prosecution. The Police policy, pattern, custom or practice is as follows:

31.     On August 20, 1998, Donaldson called the Chicago Police Department (hereafter "CPD") to report that his wife had been raped at Chicago Read Mental Health Center (hereafter "READ"), an Illinois State Government mental healthcare facility. A copy of the initial report is attached hereto and is marked as **EXHIBIT A.**

32.     On January 20, 1999, WALTER HEHNER, A.S.A., Deputy Supervisor for the Felony Review Unit, State's Attorney's Office of Cook County, Illinois, said that his wife was

5

not raped because she had consented to the sex, and stated the following:

> Your inquiry concerning why no charges were filed against the patient that had sexual relations with your wife while she was a patient at Read Mental Health Hospital. . . . . As I explained in our meeting, her consent to sexual relations is a defense to a claim of sexual assault.
>
> **EXHIBIT B.**

33. On March 1, 1999, JOHN BUCHANAN, Coordinator of Operations Office of Professional Standards, (hereafter "OPS") for Chicago Police, responded to a letter that Pedro had written to the Mayor of Chicago, the Honorable Richard M. Daley. A copy of OPS Buchanan's letter is attached hereto and is marked as **EXHIBIT C.**

34. On July 21, 1999, JERRY C. ROBINSON, Assistant Deputy Superintendent of Chicago Police, Internal Affairs Division (hereafter "IA"), stated in pertinent part as follows:

> After having conducted a thorough review of all of the evidence available in this particular case, we have concluded that the allegations cannot be sustained.
>
> **EXHIBIT D.**

35. MAYOR DALEY / IA ROBINSON / OPS BUCHANAN / SAO HEHNER, were policy making official(s), who willfully, wantonly and maliciously breached their duty to "protect a rape victim", and instead used their governmental power to get away with said acts or omissions that "Eriko was not raped", by gaming the system to skew / contravene / weaponize Chicago's policy, custom, pattern or practice that "Mental Health Hospital patients" can "consent to sexual relations". Plaintiff alleges he was denied his right to due process guaranteed by the Constitution of the State of Illinois.

36. On September 9, 1999, Pedro called Chicago Police after Eriko had been assaulted at READ, and responding Police Officers L. LAMPRES and G. GARCIA made out an initial Police Report, and wrote that Eriko suffered a cut from a back hand slap by a READ

6

patient. A copy of which is attached hereto and is marked as **EXHIBIT E.**

37.     On May 10, 2001, Eriko's READ psychiatrist DR. RHODORA PALACIO M.D., and social worker MAUREEN A. RESHESKE, LCSW SW IV, Unit B-South, wrote Pedro a letter to inform him that Eriko had reported a sexual relationship with another patient at READ. A copy of which is attached hereto and is marked as **EXHIBIT F.**

38.     On June 3, 2003, Eriko told Pedro she was assaulted by a READ patient named Mary, and Pedro called 911, but the police officer hung-up on him.

39.     On June 4, 2003, Pedro returned to READ, called 911 and asked for a supervisor, and Police Officer Reynolds and Sergeant Dunn responded to the call, but they told him that CPD **stopped** making out Police Reports for Pedro.

40.     On July, 12, 2003, Eriko wrote Pedro and told him that MONTANA had assaulted her for the 3rd time, and that he was trying to kill her by slamming her head against the floor, but no one was processed. Eriko wrote in pertinent part as follows:

> **MY WHITE TALBOT T-SHIRT, TOWEL WAS COVERED**
> **WITH MY BLOOD . . . MONTANA WAS TRYING TO**
> **KILL ME, IF HE WASN'T TRYING TO KILL ME WHAT**
> **WAS HE DOING.**
>
> **EXHIBIT G.**

41.     On July 14, 2003, Pedro called Police and Officers Hunter, Star #5578, and Vitellary Star #10731 responded. The Officers confirmed Eriko had a black eye and bruises on her face, but said CPD **stopped** issuing Pedro Police Reports.

42.     On or about June 2013, Donaldson called Police to report that he had been assaulted by a security guard at the Chateau Hotel, and Police refused his request for a: 1) report; 2) investigation; 3) arrest; 4) jailing, or; 5) prosecution of the security guard.

43.     On November 27, 2015, Donaldson called Police to report that he had been

7

assaulted by an "L" Train Operator, and Police refused his request for a: 1) report; 2) investigation; 3) arrest; 4) jailing, or; 5) prosecution the "L" Train Operator.

## POLICIES, PATTERNS, CUSTOMS, or PRACTICES AGAINST PLAINTIFF

44. On October 10, 1997, Police made a: 1) report; 2) investigation; 3) arrest; 4) jailing, and; 5) prosecution, for Domestic Battery, No 97140977201, when Pedro was the subject of a crime. Pedro's case was stricken on October 29, 1997. A copy of which is attached hereto and is marked as **EXHIBIT H.**

45. On July 9, 2001, Police made a: 1) report; 2) investigation; 3) arrest; 4) jailing, and; 5) prosecution, for Domestic Battery, No 01144263101, when Pete was the subject of a crime. Pete's case was stricken on July 17,2001 and October 29, 2001. A copy of which is attached hereto and is marked as **EXHIBIT I.**

46. On January 20 2009, Police made a: 1) report; 2) investigation; 3) arrest; 4) jailing, and; 5) prosecution, for Reckless Conduct and Criminal Damage to Property, No 09121271001, when Pedro was the subject of a crime. Pedro's case was stricken on March 31, 2009. A copy of which is attached hereto and is marked as **EXHIBIT J.**

47. In 2018, Police made a: 1) report; 2) investigation; and; 3) prosecution for disorderly conduct for locking up his bike in a handicap rail ramp, a misdemeanor that carries a $250.00 fine, No. 17-mc-100008, when Pedro was the subject of a crime. Pedro was convicted but overturned on appeal by the United States District Court for the Northern District of Illinois - Eastern Division, on August 13, 2018.

48. The policy, pattern, custom or practice of Defendants City of Chicago, Officer

8

Kanowski, and Officer Mehmedagic, as set forth above, is a violation of the Plaintiff's right to due process guaranteed by the Fourteenth Amendment to the United States Constitution.

49.     As a direct and proximate cause of the above described wrongful infringement of his equal rights under the Constitution, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, medical expenses, mental anguish and emotional distress and damages.

WHEREFORE, PLAINTIFF prays for judgment against all DEFENDANTS, jointly and severally, in a fair and responsible amount including compensatory damages, punitive damages, and for any other relief this Honorable Court deems fair and just.

### COUNT II
### UNEQUAL TREATMENT
### OF PESONS SIMILAR SITUATED

50.     Plaintiff re-alleges and incorporates ¶'s 1-49, as ¶ 50 of this count.

51.     CPD has policy, pattern, custom, or practice of treating Donaldson unequally.

52.     Officer Kanowski, and Officer Mehmedagic, cited Donaldson for riding his bike on the sidewalk, conversely, Police did not cite the motorist for sending him to hospital by striking the bicyclist with his vehicle.

53.     Officer Kanowski and Officer Mehmedagic went to Saint Francis Hospital to deliver Donaldson his ticket, and told him the motorist was not at fault for striking him with the front of his vehicle.

54.     Officer Kanowski and Officer Mehmedagic went to the Hospital, and after Donaldson asked if there were any cameras in the area, they told him no. But there was a camera

9

in the front of the Edge Apartments.

55.     Officer Kanowski and Officer Mehmedagic stated in the report that they had asked the Edge Apartments for footage of the accident, and were inform to return when the owner was present, but the Police Officers never returned.

56.     The policy, pattern, custom or practice of Defendants City of Chicago, Officer Kanowski, and Officer Mehmedagic, as set forth above, is a violation of the Plaintiff's right to equal protection guaranteed by the Fourteenth Amendment to the United States Constitution.

57.     As a direct and proximate cause of the above described wrongful infringement of his equal rights under the Constitution, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, medical expenses, mental anguish and emotional distress and damages.

WHEREFORE, PLAINTIFF prays for judgment against all DEFENDANTS, jointly and severally, in a fair and responsible amount including compensatory damages, punitive damages, and for any other relief this Honorable Court deems fair and just.

## COUNT III
## RACIAL DISCRIMINATION
### Donaldson v. City of Chicago, Officer Kanowski, and Officer Mehmedagic

58.     Plaintiff re-alleges and incorporates ¶'s 1-57, as ¶ 58 of this count.

59.     On August, 31, 2023, Officers Kanowski, and Mehmedagic denied the Plaintiff due process and equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution, because of his race Black

60.     On August, 31, 2023, Officer Kanowski, and Officer Mehmedagic denied the Plaintiff his Civil Rights, because of his race Black

10

61. By the actions detailed above, among others, the Defendants have intentionally discriminated against Donaldson, in violation of his Civil Rights, among other things, failing to issue the motorist a citation for striking the Plaintiff with his vehicle, covering up the accident by failing to secure video evidence from the security cameras. Any stated reason for the Defendants conduct are not the true reasons, but instead are a pretext to hide the Defendants racist animus.

62. As a direct and proximate result of the Defendants' unlawful racial discrimination in violation of his Civil Rights, Donaldson has suffered mental anguish, and continues to suffer mental anguish, for which he is entitled to an award of damages.

63. Defendants' unlawful and discriminatory actions constitute malicious, willful, and wonton Civil Right violations, for which Donaldson is entitled to an award of punitive damages.

64. But for the Defendants' unlawful and discriminatory action, Donaldson would not have suffered damages.

WHEREFORE, PLAINTIFF prays for judgment against all DEFENDANTS, jointly and severally, in a fair and responsible amount including compensatory damages, punitive damages, and for any other relief this Honorable Court deems fair and just.

## COUNT IV
## CIVIL CONSPIRACY
### Donaldson v. City of Chicago, Officer Kanowski, and Officer Mehmedagic

65. Plaintiff re-alleges and incorporates ¶'s 1-64, as ¶ 65 of this count.

66. Acting in the furtherance of their plan and conspiracy, Defendants City of Chicago, Officer Kanowski and Officer Mehmedagic committed overt acts, failing to issue the motorist a citation for striking the Plaintiff with his vehicle, and covering up the accident by failing to secure video evidence from the security cameras.

67. City of Chicago, Officers Kanowski and Mehmedagic by and through its agents and / or employees reached an understanding, engaged in a sequence of events or course of conduct, and otherwise, agreed and conspired together to violate Donaldson's Constitutional Rights

68. Each Defendant reached this understanding, and agreement, and did engage in this course of conduct with the mutual purpose, objective and knowledge that it would deprive Donaldson of his Civil Rights, to due process, and equal protection of the laws guaranteed by the U.S. Constitution.

69. Said conspiracy joint action violated Donaldson's Constitutional Rights in contravention of the U.S. Constitution.

70. Defendants' course of conduct was done willfully, maliciously, and intentionally, or done with reckless indifference to Donaldson's Constitutional Rights.

71. As a direct and proximate cause of the above described wrongful infringement of Donaldson's Constitutional rights, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, medical expenses, mental anguish and emotional distress and damages.

WHEREFORE, PLAINTIFF prays for judgment against all DEFENDANTS, jointly and severally, in a fair and responsible amount including compensatory damages, punitive damages, and for any other relief this Honorable Court deems fair and just.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

72. Plaintiff re-alleges and incorporates ¶'s 1-71, as ¶ 72 of this count.

73. City of Chicago, Officer Kanowski, and Officer Mehmedagic as set forth above,

were extreme and outrageous, and Defendants either intended to inflict severe emotional distress upon Donaldson, or knew or should have known that their conduct would in fact inflict severe emotional distress.

74.     As a proximate result of the Defendant's actions, Donaldson has suffered severe emotional distress.

WHEREFORE, DONALDSON prays for judgment against all DEFENDANTS, jointly and severally, in a fair and responsible amount including compensatory damages, punitive damages, and for any other relief this Honorable Court deems fair and just.

## COUNT VI
## INDEMNIFICATION

75.     Plaintiff re-alleges and incorporates ¶'s 1-74, as ¶ 75 of this count.

76.     Defendant Chicago of Chicago is the employer of Officer Kanowski, and Officer Mehmedagic.

77.     Pursuant to section 10/9-102 of the Illinois Compiled Statutes, 745 ILCS 10/9-102, public entities are directed to pay any tort judgments for compensatory damages for which their employees are found liable within the scope of their employment.

WHEREFORE, should DEFENDANTS Officer Kanowski or Officer Mehmedagic be found liable for one or more of the claims set forth above, DONALDSON demands that City of Chicago, indemnify any compensatory judgment DONALDSON obtains against said DEFENDANTS, pursuant to 745 ILCS 10/9-102, and for any other relief this Honorable Court deems fair and just.

## COUNT VII
## MOTORIST'S NEGLIGENCE

78. Plaintiff re-alleges and incorporates ¶'s 1-77, as ¶78 of this count.

79. The Motorist, at all times relevant, had a duty to maintain proper look out for bicyclists and pedestrians before exiting into Sheridan Road via the Edge Apartments driveway. A copy of which is attached hereto and is marked as **EXHIBIT K.**

80. The Motorist breached his duty by failing to maintain proper look out for bicyclists and pedestrians before exiting into Sheridan Road via the Edge Apartments driveway, and struck the bicyclist on the sidewalk with the front of his vehicle. A copy of which is attached hereto and is marked as **EXHIBIT L.**

81. As a direct and proximate cause of the above described wrongful infringement, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, medical expenses, mental anguish and emotional distress and damages.

82. Donaldson's shoulder is deformed from the accident, and his medical bills from Saint Francis Hospital exceed $20,000.00.

WHEREFORE, PLAINTIFF prays for judgment against all DEFENDANTS, jointly and severally, in a fair and responsible amount including compensatory damages, punitive damages, and for any other relief this Honorable Court deems fair and just.

## COUNT VIII
## CHICAGO PARK DISTRICT'S NEGLIGENCE

83. Plaintiff re-alleges and incorporates ¶'s 1-82, as ¶ 83 of this count.

84. Chicago Park District, at all times relevant, had a duty to manage and maintain the Rabbi Herman and Lotte Schaalman Park. Park 517, located at Thorndale and Sheridan.

14

85. The Chicago Park District, breached its duty by failing to maintain the landscape of the Rabbi Herman and Lotte Schaalman Park, and instead maintained danger in the premises by allowing the shrubs to grow so that it blocked the view of the motorists exiting into Sheridan Road via the Edge Apartments driveway, who struck the bicyclist on the sidewalk with the front of his vehicle.

86. As a direct and proximate cause of the above described wrongful infringement, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, medical expenses, mental anguish and emotional distress and damages.

87. Donaldson's shoulder is deformed from the accident, and his medical bills from Saint Francis Hospital exceed $20,000.00.

WHEREFORE, PLAINTIFF prays for judgment against all DEFENDANTS, jointly and severally, in a fair and responsible amount including compensatory damages, punitive damages, and for any other relief this Honorable Court deems fair and just.

## COUNT IX
## THE EDGE APARTMENTS NEGLIGENCE

88. Plaintiff re-alleges and incorporates ¶'s 1-87, as ¶ 88 of this count.

89. The Edge Apartments, at all times relevant, had a duty to manage and maintain the maintenance and upkeep of the apartments, including marking parking spaces in its parking lot.

90. The Edge Apartments, breached its duty to manage and maintain the premises, and instead, maintained danger in the premises by allowing cars to park on a designated spot that blocked the view of the motorists exiting into Sheridan Road via the Edge Apartments driveway,

and caused the motorist to strike the bicyclist on the sidewalk with the front of his vehicle.

91. As a direct and proximate cause of the above described wrongful infringement, Donaldson has suffered pecuniary damages, including severe emotional pain and suffering, loss of normal life, medical expenses, mental anguish and emotional distress and damages.

92. Donaldson's shoulder is deformed from the accident, and his medical bills from Saint Francis Hospital exceed $20,000.00.

WHEREFORE, PLAINTIFF prays for judgment against all DEFENDANTS, jointly and severally, in a fair and responsible amount including compensatory damages, punitive damages, and for any other relief this Honorable Court deems fair and just.

## JURY DEMAND

93. Donaldson hereby demands trial by jury on all claims so triable.

Respectfully Submitted,

By: _Pedro Donaldson_
Pedro Donaldson, the Plaintiff

Pedro Donaldson.
The Plaintiff, *pro se*
820 S. Damen Fl 8 SWS 122
Chicago, Illinois 60612
No phone

GENERAL OFFENSE
CASE REPORT
CHICAGO POLICE

OFFENSE/INCIDENT: PRIMARY CLASSIFICATION *SEX ASSLT* SECONDARY CLASSIFICATION *NON REPT, HATE*

APT NO

ADDRESS OF OCCURRENCE *PARK*

TYPE OF LOCATION ON PREMISE WHERE OFFENSE OCCURRED (GIVE NAME OF LOCATION IF APPLICABLE) *APARTM UNIT*

**IMPORTANT: KEEP THIS NOTICE FOR YOUR PERSONAL RECORDS**

CASE NAME - PEOPLE OF THE STATE OF ILLINOIS/CITY OF CHICAGO vs. _____

If an arrest has taken place, the following is your court information: Date: _____ Time: _____ Court Branch: _____ Court Loc. : _____

If you need more help call the Victim/Witness Assistance Program of the Cook County State's Attorney's Office at (312) 890 - 7200.

**VICTIM INFORMATION NOTICE/ CHICAGO POLICE DEPARTMENT**   *THIS IS NOT AN OFFICIAL POLICE REPORT - IT IS FOR INFORMATION PURPOSES ONLY*

Your case will be on file with the Chicago Police Department under the above listed R.D. Number. Refer to this number whenever you are communicating with the Chicago Police Department concerning this incident. Your case will be assigned for follow-up investigation based upon specific facts obtained during the initial investigation. The presence of these facts can predict whether a comprehensive follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property. Your case will be reviewed and retained to determine if criminals active in the area can be identified. *A detective will not routinely contact you unless additional information is required or your other assistance is needed.*

**TO REPORT ADDITIONAL INFORMATION**
If you have knowledge of specific facts which might assist in the investigation of your case, please contact the unit marked below:

| | FOR PROPERTY CRIMES | FOR VIOLENT CRIMES | FOR YOUTH DIVISION |
|---|---|---|---|
| AREA 1 | ☐ 747-8384 | ☐ 747-8380 | ☐ 747-8385 |
| AREA 2 | ☐ 747-8273 | ☐ 747-8272 | ☐ 747-8276 |
| AREA 3 | ☐ 744-8263 | ☐ 744-8261 | ☐ 744-8266 |
| AREA 4 | ☐ 746-8253 | ☐ 746-8252 | ☐ 746-9259 |
| AREA 5 | ☐ 746-8362 | ☑ 746-8282 | ☐ 746-8365 |

BOMB & ARSON (all Areas) ☐ 747-6273    AUTO THEFT (all Areas) ☐ 747-8254

**COPY OF THE REPORT**
The above listed R D. Number may suffice for insurance purposes, however, there may be instances when a copy of the case report is desired. A copy of the case report which verifies that an incident of injury, loss or damage has been reported to the Chicago Police Department may be obtained after 14 working days from the date the incident was reported. To obtain a copy of the report, send a check or money order payable to the *"DEPARTMENT OF FINANCE - CITY OF CHICAGO"* in the amount of $.50 and a self-addressed stamped return envelope to:

Chicago Police Department
Records Inquiry Section, Room 209
1121 South State Street
Chicago, IL      60605

Include the following information with your request: 1) Victim's name and address (or person reporting same), 2) Type of incident, 3) Address of occurrence, 4) R.D. Number.

**MAKE THE RIGHT CALL**
- report a crime in progress or other emergency that requires immediate police response, call 9-1-1.
- report non-emergency situations, call the Police Department at 746-6000.

**CHICAGO ALTERNATIVE POLICING STRATEGY (CAPS)**
**SAFE NEIGHBORHOODS ARE EVERYBODY'S BUSINESS**
The police alone cannot solve the problems of crime in our City. It takes an active and informed community working with the police and other City agencies to really make a difference. Join your neighbors and your neighborhood police officers as we work together to reduce crime and improve the quality of life in our City. Become part of the CAPS team in your community. To find out how, call:

CAPS HOTLINE ☐    744-CAPS (744-2277)

More information about CAPS is available on the World Wide Web at http://www.ci.chi.il.us

You live on Beat_____. Your next Beat Community Meeting will be held

(date and time) _____ at (location)_____

_____

**TELECOMMUNICATIONS DEVICE FOR THE DEAF/TELETYPE (TDD/TTY)**
Hearing-impaired persons who possess such equipment may communicate with the Chicago Police Department 24 hours a day by calling 746 - 9715. Hearing- impaired persons in need of assistance during normal business hours may also contact their local police district or the Preventive Programs and Neighborhood Relations Division at 744-8006.

**RECOVERY OF PROPERTY - STOLEN VEHICLE RECOVERED**
The Chicago Police Department must be notified *IMMEDIATELY*, via the "9-1-1" emergency number, when property reported lost or stolen is recovered.

**CREDIT CARDS - CHECKS, LOST OR STOLEN**
Immediately notify the concerned credit card issuer or bank by telephone to reduce the possibility of being liable for the unauthorized use of your lost or stolen credit card or check. It is suggested that you also inform the credit card issuer or bank in writing as a follow-up measure to ensure proper notification.

**ILLINOIS CRIME VICTIMS NOTIFICATION**
Innocent victims of violent crime may be eligible to receive benefits from the Illinois Crime Victims Compensation Program for such costs as medical, funeral, loss of support and wage loss. *NO RECOVERY IS PROVIDED FOR PROPERTY LOSS OR DAMAGE, NOR FOR PAIN OR SUFFERING.* To apply or to determine whether one qualifies, the victim or, if deceased, a relative or dependent, must contact the Illinois Attorney General's Office.

Further information and claim forms can be obtained from
Crime Victims Compensation Pr
Office of the Attorney General of Il
100 West Randolph Street, 13th Floor
Chicago, IL      60601
Telephone: 814-2581

EXHIBIT A

PD-11 380. Part 3 English-(Rev 8/96)       RETAIN THIS NOTICE FOR YOUR PERSONAL RECORDS



## OFFICE OF THE STATE'S ATTORNEY
### COOK COUNTY, ILLINOIS

RICHARD A. DEVINE
STATE'S ATTORNEY

CRIMINAL DIVISION
2650 SOUTH CALIFORNIA AVENUE
CHICAGO, ILLINOIS 60608

January 22, 1999

Mr. Pedro Donaldson
426 West Belmont, Apt 402
Chicago, Il 60657

Dear Mr. Donaldson:

This correspondence is to reflect our discussion in my office on January 20, 1999. Your inquiry concerning why no charges were filed against the patient that had sexual relations with your wife while she was a patient in the Reed Mental Health Hospital. Your wife did tell the police that no one forced her to have sex. You also told me that your wife still insists that she consented to the sexual relations. As I explained in our meeting, her consent to sexual relations is a defense to a claim of sexual assault.

Respectfully Submitted,

Walter Hehner, A.S.A.
Deputy Supervisor
Felony Review Unit

**EXHIBIT B**

**CITY OF CHICAGO/DEPARTMENT OF POLICE**
1121 South State Street
Chicago, Illinois 60605

(312) 746-6000 Non-Emergency (Voice)
(312) 746-9715 Non-Emergency (TTY)
9-1-1 Emergencies
http://www.ci.chi.il.us

**Richard M. Daley**, Mayor
**Terry G. Hillard**, Superintendent of Police

1 March 1999

Pedro Donaldson
426 W. Belmont Avenue
Chicago, Illinois 60657

Dear Mr. Donaldson ,

Your letter addressed to the Mayor of Chicago, Richard M. Daley was forwarded to the Office of Professional Standards for a response.

The Office of Professional Standards registers all complaints against Department Members. However, the Office of Professional Standards is responsible for conducting investigations of complaints involving allegations of excessive force and domestic violence. All other complaints are forwarded to the Internal Affairs Division.

On November 23, 1998 we forwarded your complaint to the Internal Affairs Division for their information and review. The Internal Affairs Division contacted the Office of Professional Standards on December 11, 1998 and officially obtained Complaint Register Number 250388 on your behalf.

Mr. Donaldson on the 9th and 10th of December when you came to the Office of Professional Standards, the personnel at the Office of Professional Standards could not give you a C.R. number because one had not been registered on your complaint. The Internal Affairs Division had the authority to obtain a C.R. number.

Mr. Donaldson we are very sorry for any inconvenience or misunderstanding that we may have caused you.

Sincerely yours,

John Buchanan
Coordinator of Operations
Office of Professional Standards

**EXHIBIT C**



cc: Terry G. Hillard, Superintendent of Police
Sandra Story: Ref #136700

**CITY OF CHICAGO / DEPARTMENT OF POLICE**
1121 South State Street
Chicago, Illinois 60605

(312) 746 - 6000 Non-Emergency (Voice)
(312) 922 - 1414 Non- Emergency (TDD)
9 - 1- 1 Emergencies

Richard M. Daley, Mayor
Matt L. Rodriguez, Superintendent of Police

July 21, 1999

Mr. Pedro Donaldson
426 W. Belmont-Apt.402
Chicago, IL 60657

REFERENCE: COMPLAINT REGISTER NUMBER 250388

Dear Mr. Donaldson:

The Chicago Police Department has completed its investigation into the allegations that members of the Chicago Police Department were guilty of misconduct. I want to thank you for bringing this matter to our attention.

We share your concern over the conduct of our personnel and conduct rigorous investigations into all reports of misconduct. Whenever evidence sufficient to sustain an allegation is obtained, appropriate disciplinary action is imposed.

After having conducted a thorough review of all of the evidence available in this particular case, we have concluded that the allegations cannot be sustained. This does not mean, however, that we have dismissed your allegation as untrue. It means that we were unable to uncover or acquire sufficient evidence for a sustained finding.

We will retain a copy of this investigation in the event that additional evidence becomes available at some future time. If additional evidence is obtained, the investigation will be reopened.

I thank you again for bringing this matter to our attention. Please be assured that all such matters receive our closest attention, and that the continued cooperation of concerned citizens contributes significantly to our efforts to improve the Chicago Police Department.

Sincerely,

Jerry C. Robinson
Assistant Deputy Superintendent
Internal Affairs Division

**EXHIBIT D**



CASE REPORT
CHICAGO POLICE

BATTERY    10.4.60    SIMPLE    D - 564754

| | | | | 5. FIRE RELATED | 6. DATE OF OCCURRENCE - TIME | 7. BEAT OF OCCUR. | 8. BEAT/UNIT ASSI. |
|---|---|---|---|---|---|---|---|

4. ADDRESS OF OCCURRENCE 4.2.0.0 (N) OAK PARK

☐ 1. YES  ☒ NO    09 SEP 99 0820    1632    1645

9. TYPE OF LOCATION OR PREMISE WHERE OFFENSE OCCURRED (GIVE NAME OF LOCATION IF APPLICABLE)
HOSPITAL

10. LOCATION CODE  Z.3.3    11. DATE R.O. ARRIVED - TIME  09 SEP 99 1940    12. ASSIGNED BY
☐ 2 ON VIEW  ☐ 3 SUPERVISOR

All information, descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

| VICTIM NO. | 21. NAME (LAST - FIRST - M.I.) | IDENTITY VERIFIED | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX - RACE - AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. TIME AVAIL. | 27. OCCUPATION | 28. INJURED | 29. VICT. REL. CO. |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | D | ☐ | 426 W. BELMONT | F, 6, 27 | NONE | NONE | ANY | NONE | x | 23 |
| ADDITIONAL VICTIM | | ☐ | | | | | | | | |

DATA ENTERED
DD AREA 5

RACE CODES:
3-BLACK HISPANIC
4-WHITE HISPANIC

20. PARENT/GUARDIAN, IF JUVENILE

RESTRICTED INFORMATION
HAS BEEN DELETED
RECORD INQUIRY SECTION
CHICAGO POLICE DEPARTMENT
RESTRICTED INFORMATION
HAS BEEN DELETED
RECORD INQUIRY SECTION
CHICAGO POLICE DEPARTMENT

| 1 MONEY | 2 JEWELRY | 3 FURS | 4 CLOTHING | 5 OFFICE EQUIP. | 6 TV, RADIO, STEREO | 7 HOUSEHOLD GOODS | 8 CONSUM. GOODS | 9 FIREARMS | 10 Narc /Dang. Drugs | 11 OTHER | 12 NONE |
|---|---|---|---|---|---|---|---|---|---|---|---|

71. VEHICLE/TRAILER ☐ STOLEN ☐ THEFT FROM ☐ OFFENDER  YEAR  MAKE  BODY STYLE / COLOR  V.I.N.  STATE LICENSE NO.  STATE  EXPR. MO/YR  73. PROPERTY INVENTORY NO(S)  74. VEH. INVENTORY NO. RO

CHICAGO POLICE DEPARTMENT          CHICAGO POLICE DEPARTMENT
RESTRICTED INFORMATION    RESTRICTED INFORMATION          RESTRICTED INFORMATION
RESTRICTED INFORMATION
HAS BEEN DELETED

SLAPPED VICTIM W/ THE BACK OF HIS HAND ON HER LEFT CHEEK. VICTIM WAS CUT BUT

REFUSED MED. ATTN. FROM HOSPITAL.

RESTRICTED INFORMATION

☐ EXTRA COPIES REQUIRED ☐ NORMAL    ☐ CONT'D OTHER SIDE    ☐ R.O.

33. FIRST OFFICER AT SCENE    34. OFFICER NOTIFYING ☐ 1ST O/S ☐ R.O.    PERSON ☐ NOTIFIED ☐ ARRIVED    DATE (DAY MO. YR.)

32. REPORTING OFFICER'S NAME (PRINT)  L. LAMPLES    STAR NO. 5351    OFFICER SIGNATURE    DATE INQUIRY COMPLETED - TIME  09 SEP 99 2010    67. SUPERVISOR APPROVING (PRINT/SIGN)

35. REPORTING OFFICER'S NAME (PRINT)  M. GARCIA    STAR NO. 9118    OFFICER SIGNATURE    DATE APPROVED

EXHIBIT E

SEP 10 1999

DD-11,380 (Rev. 5/96)

EXHIBIT K

*CP004*     *X003135967*

# ILLINOIS TRAFFIC CRASH REPORT

Sheet __1__ of _____ Sheets

| DRAC 1 | TYFD 1 | TYFC 1 | WEAT 1 | DRVA 16 | VIS 16 | VEHD 8 | U2 | LIGHT 1 | COLL 2 | MANV 1 | U2 |
|---|---|---|---|---|---|---|---|---|---|---|---|

| INVESTIGATING AGENCY | DAMAGE TO ANY ONE PERSON'S VEHICLE / PROPERTY | TYPE OF REPORT | | R.D. Number | BEAT OF OCCURRENCE | TRFW 13 |
|---|---|---|---|---|---|---|
| CHICAGO PD | ☐ $500 OR LESS ☒ $501-$1,500 ☐ OVER $1,500 | ☐ ON SCENE ☒ NOT ON SCENE (DESK REPORT) ☐ AMENDED | ☐ A No Injury/ Drive Away ☒ B Injury and / or Tow Due To Crash | 2023 JG404878 YR | 2022 | |

| ADDRESS NO. 5910 | HIGHWAY & STREET NAME N. SHERIDAN RD | ☒ CITY ☐ TOWNSHIP ☐ CHICAGO | INTERSECTION RELATED ☐Y ☒N | DATE OF CRASH 08 31 2023 | TIME 08:11 ☒AM ☐PM | SECONDARY CRASH ☐ YES ☒ NO | VEHT 1 |
|---|---|---|---|---|---|---|---|
| ☐ FT/M N E S W ☐ AT INTERSECTION WITH (NAME OF INTERSECTION OR ROAD FEATURE) | | COUNTY COOK | PRIVATE PROPERTY ☒ DOORING WITH PEDALCYCLIST ☐Y ☒N | HIT & RUN ☐Y ☒N | # OF MOTOR VEHICLES INVLD | FLOW CONDITION ☐ SLOW ☐ STOPPED ☒ FREE FLOW | U2 1 |

## UNIT 1

| ☒ DRIVER ☐ PARKED ☐ DRIVERLESS ☐ PED ☐ PEDAL ☐ EQUS ☐ NMV ☐ RGV ☐ DV | DATE OF BIRTH 01 31 1953 | MAKE VOLKSWAGEN | MODEL GOLF | YEAR 2019 | CIRCLE NUMBER(S) FOR DAMAGED AREA(S) 00 - NONE 13 - UNDERCARRIAGE 14 - TOTAL (ALL) 15 - OTHER 99 - UNKNOWN POINT OF FIRST CONTACT 11 | TOWED DUE TO CRASH Y☐ N☒ FIRE ☐ ☒ DISTRACTED ☒ ☐ Distraction Value 9 COM VEH ☐ ☒ If Yes, See Sidebar |
|---|---|---|---|---|---|---|

NAME (LAST, FIRST, M) DUDA, RONALD

STREET ADDRESS 5915 N KENNETH AVE

| SEX M | SAFT 9 | AIR 4 | AUTOMATION SYSTEM ☐Y ☒N ☐UNK | LEVEL IN VEH. 0 | LEVEL ENGAGED AT CRASH 0 |
|---|---|---|---|---|---|

| CITY CHICAGO | STATE IL | ZIP 60646 | INJ 0 | EJCT 1 | EPTH 0 | PLATE NO. BH78830 | STATE IL | YEAR 2023 |
|---|---|---|---|---|---|---|---|---|

| TELEPHONE 773-682-6536 | DRIVER'S LICENSE NO. D300-7265-3031 | STATE IL | CLASS D | CDL ID | VIN 3VWG57AU1KM030549 | INSURANCE CO. FARMERS | EXPIRED ☒Y ☐N |
|---|---|---|---|---|---|---|---|

| EMS AGENCY | PEDV | PPA | PPL | VEHICLE OWNER (LAST, FIRST, M) DUDA, RONALD | POLICY NUMBER 536873788 |
|---|---|---|---|---|---|

| HOSPITAL (TAKEN TO) | INCIDENT RESPONDER ☐Y ☒N | IF Y | OWNER STREET, CITY, STATE, ZIP 5915 N KENNETH AVE, CHICAGO, IL, 60646 | PHONE NUMBER 773-682-6536 |
|---|---|---|---|---|

## UNIT 2

| ☒ DRIVER ☐ PARKED ☐ DRIVERLESS ☐ PED ☒ PEDAL ☐ EQUS ☐ NMV ☐ RGV ☐ DV | DATE OF BIRTH 01 27 1959 | MAKE | MODEL | YEAR | CIRCLE NUMBER(S) FOR DAMAGED AREA(S) 00 - NONE 13 - UNDERCARRIAGE 14 - TOTAL (ALL) 15 - OTHER 99 - UNKNOWN POINT OF FIRST CONTACT | TOWED DUE TO CRASH Y☐ N☐ FIRE ☐ ☐ DISTRACTED ☒ ☐ Distraction Value 9 COM VEH ☐ ☐ If Yes, See Sidebar |
|---|---|---|---|---|---|---|

NAME (LAST, FIRST, M) DONALDSON, PEDRO ADAN

STREET ADDRESS 820 S DAMEN AVE APT FL8 SWS122

| SEX M | SAFT 5 | AIR | AUTOMATION SYSTEM ☐Y ☒N ☐UNK | LEVEL IN VEH | LEVEL ENGAGED AT CRASH |
|---|---|---|---|---|---|

| CITY CHICAGI | STATE IL | ZIP 60612 | INJ B | EJCT 2 | EPTH 8 | PLATE NO. | STATE | YEAR |
|---|---|---|---|---|---|---|---|---|

| TELEPHONE NONE | DRIVER'S LICENSE NO. N/A | STATE | CLASS | CDL ID | VIN | INSURANCE CO. | EXPIRED ☐Y ☐N |
|---|---|---|---|---|---|---|---|

| EMS AGENCY CFD | PEDV 1 | PPA 64 | PPL 6 | VEHICLE OWNER (LAST, FIRST, M) | POLICY NUMBER |
|---|---|---|---|---|---|

| HOSPITAL (TAKEN TO) ST FRANCIS | INCIDENT RESPONDER ☐Y ☐N | IF Y | OWNER STREET, CITY, STATE, ZIP | PHONE NUMBER |
|---|---|---|---|---|

| (UNIT) | (SEAT) | (DOB) | (SEX) | (SAFT) | (AIR) | (INJ) | (EJCT) | (EPTH) | PASSENGERS & WITNESS ONLY (NAME) / (ADDRESS) / (TELEPHONE) | (EMS) | (HOSPITAL) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

| EV | DGST | EVNT | LOC | DAMAGED PROPERTY OWNER NAME | DAMAGED PROPERTY | POLICE NOTIFIED 08 31 2023 | TIME 08:13 ☒AM ☐PM | Did crash occur in a Work Zone? ☐Y ☒N |
|---|---|---|---|---|---|---|---|---|
| 1 | ☒ | 13 | 5 | | | | | |
| 2 | ☐ | | | PROPERTY OWNER'S ADDRESS: STREET, CITY, STATE, ZIP | PRIMARY CAUSE 14 / SECONDARY CAUSE 18 | EMS NOTIFIED 08 31 2023 | TIME 08:11 ☐AM ☐PM | If YES check one below: ☐ Construction |
| 3 | ☐ | | | ☐ CITATIONS ISSUED ☐ PENDING | SECTION 3-707-A / CITATION NO. TV 464-620 | EMS ARRIVED 08 31 2023 | TIME 08:16 ☒AM ☐PM | ☐ Maintenance |
| 1 | ☒ | 11 | | ARREST NAME DUDA, RONALD | | | | ☐ Utility |
| | | | | ☐ CITATIONS ISSUED ☐ PENDING | SECTION / CITATION NO. | ROAD CLEARANCE | TIME ☐AM ☐PM | ☐ Unknown work zone type |
| 2 | ☐ | | | ARREST NAME | | | | |
| 3 | ☐ | | | OFFICER I.D. 10396 / SIGNATURE JANOWSKI, JONATHAN | BEAT / DIST. 2023 | SUPERVISOR ID. M. DINEEN / 1755 | COURT DATE 10 05 2023 TIME 09:00 ☐AM ☐PM | Workers present? ☐Y ☐N |

**REMEMBER TO USE BLACK INK, PRESS HARD, PRINT LEGIBLY AND COMPLETE ALL REQUIRED FIELDS!**

SR 1050C (JAN. 2018)

Printed by the authority of the State of Illinois

*\* IF YES TO COM VEH, COMPLETE LARGE TRUCK, BUS, OR HM VEHICLE AREA ON BACK \**

| TRFW 13 | VEHT 1 | $ LNS U1 4 | U2 | ALGN U1 1 | U2 1 | RSUR 1 | VEHU 2 | U2 | SPDR U1 0 | U2 0 | RDEF 1 | BAC U1 96 | U2 96 | # OCCS U1 1 | U2 | DIRP U1 3 | U2 | SLMT U1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Case: 1:25-cv-10410 Document #: 1 Filed: 08/29/25 Page 23 of 24 PageID #:23

| X003135967 | RD NUMBER JG404878 | U1 Drug 1 000 | U1 Drug 2 000 | U2 Drug 1 000 | U2 Drug 2 000 | | **LARGE TRUCK, BUS, OR HM VEHICLE** |

**INDICATE NORTH BY ARROW**

S/B SHERIDAN RD LANES

SIDEWALK

PARKED VEHICLE

DRIVEWAY

### LARGE TRUCK, BUS, OR HM VEHICLE

IF MORE THAN ONE CMV IS INVOLVED, USE SR 1050A ADDITIONAL UNITS FORMS.

A CMV is defined as any motor vehicle used to transport passengers or property and:

1. Has a weight rating more than 10,000 pounds (example: truck or truck/trailer combination); or
2. Is used or designed to transport more than 15 passengers including the driver (example: shuttle or charter bus); or
3. Is designed to carry 15 or fewer passengers and operated by a contract carrier transporting employees in the course of their employment (example: employee transporter - usually a van type vehicle or passenger car); or
4. Is used or designated to transport between 9 and 15 passengers, including the driver, for direct compensation (example: large van used for specific purpose); or
5. Is any vehicle used to transport any hazardous material (HAZMAT) that requires placarding (example: placards will be displayed on the vehicle).

CARRIER NAME _____

ADDRESS _____

CITY/STATE/ZIP _____

MOTOR CARR. ID ☐ Interstate ☐ Intrastate
☐ Not in Comm./Govt. ☐ Not in Comm./Other

USDOT NO. _____ ILCC NO. _____

Source of above ☐ Side of Truck ☐ Papers ☐ Driver ☐ Log Book

GVWR/GCWR ☐ <10,000 ☐ 10,000 - 26,000 ☐ >26,000

Were HAZMAT placards on vehicle? ☐ Yes ☐ No

If Yes, Name on placard _____

4 digit UN NO. _____ 1 digit Hazard class No. _____

Did HAZMAT spill from vehicle (do NOT consider FUEL from vehicle's own tank)? ☐ Yes ☐ No ☐ Unknown

Did HAZMAT Regulations violation contribute to the crash? ☐ Yes ☐ No ☐ Unknown

Did Carrier Safety Regulations (MCS) violation contribute to the crash? ☐ Yes ☐ No ☐ Unknown

Was a driver/vehicle Examination Report Form completed?

HAZMAT ☐ Yes ☐ No ☐ Unknown  Out of Service ☐ Yes ☐ No
MCS ☐ Yes ☐ No ☐ Unknown  Out of Service ☐ Yes ☐ No

Form Number _____

**NARRATIVE (refer to vehicle by unit #)**

EVENT #03198. THIS IS A BWC EVENT. IN SUMMARY, R/OS RESPONDED TO AN AUTO ACCIDENT INVOLVING A BICYCLE AT 5910 N SHERIDAN RD. UPON ARRIVAL, R/OS OBSERVED CFD ENG #70 TREATING UNIT 2. R/OS SPOKE WITH UNIT 1 WHO RELATED HE WAS PULLING OUT OF THE DRIVEWAY SLOWLY WHEN A BICYCLIST HIT HIS VEHICLE. UNIT 1 FAILED TO PROVIDE VALID INSURANCE AND WAS CITED ACCORDINGLY (TV-464-620). UNIT 1 REFUSED EMS. CFD AMB #13 TRANSPORTED UNIT 2 TO ST FRANCIS HOSPITAL. R/OS RELOCATED TO THE HOSPITAL AND SPOKE WITH UNIT 2 WHO RELATED HE WAS RIDING S/B ON THE EAST SIDE SIDEWALK OF SHERIDAN RD AND AS HE APPROACHED 5910 N SHERIDAN RD, UNIT 1 CAME OUT OF THE DRIVEWAY STRIKING HIM, CAUSING HIM TO FALL AND SUSTAIN INJURIES TO HIS RIGHT LEG (SWOLLEN/BRUISED), HEAD (BUMP/SWOLLEN ON LEFT SIDE), AND LEFT SHOULDER (SWOLLEN/BRUISED). UNIT 2 RECEIVED CITATION FOR RIDING BICYCLE ON THE SIDEWALK WHILE OVER THE AGE OF 12 YEARS OLD (ANOV# P006134611 15). R/OS OBSERVED DAMAGE TO UNIT 1'S DRIVERS SIDE FRONT BUMPER. UNIT 2 BEING TREATED BY DR. BICKEL. BOTH UNITS GIVEN DRIVER INFORMATION CARDS AND COURT INFORMATION. R/OS OBSERVED SECURITY CAMERAS AT 5910 N SHERIDAN BUT WERE UNABLE TO MAKE CONTACT WITH PROPERTY REPRESENTATIVE REGARDING THE FOOTAGE.

| U_1 COLOR GRAY | U_2 COLOR | STATEMENTS TAKEN ☐ Yes ☒ No  PHOTOS TAKEN ☐ Yes ☒ No |

| U_1 TOWED DUE TO ☐ DISABLING DAMAGE ☒ NOT DISABLING DAMAGE | DAMAGE EXTENT: | TOWED BY/TO: |

| U_2 TOWED DUE TO ☐ DISABLING DAMAGE ☐ NOT DISABLING DAMAGE | DAMAGE EXTENT: | TOWED BY/TO: |

| HIT AND RUN WANTED DRIVER | SEX | RACE | AGE | HAIR COLOR | DISTINGUISHING MARKS / CLOTHING | UNIT | VEHICLE COLOR |

| MAIU ONLY | OFFICER ASSIGNED STAR # | DATE ASSIGNED | SUPERVISOR STAR # | IF CASE CLEARED, HOW ☐ Arrest Prosecution | CITATION # |

| COURT RM. | TIME : ☐ AM ☐ PM | CHARGES ☐ EXC. CLEARED |

SUSPENDED
☐ TIM CANNOT ID OFFENDER  ☐ NO INVESTIGATIVE LEADS  ☐ VEHICLE STOLEN - RD #
☐ LETTER TO CONTACT RETURNED BY USPS  ☐ WARRANT OBTAINED  ☐ OTHER (SPECIFY)
☐ VEHICLE REGISTRATION UNAVAILABLE  ☐ INSUFFICIENT EVIDENCE FOR ARREST

| PREPARED BY: | STAR # | DD/MM/YR | APPROVED BY: | STAR # |

IDOT PERMIT NO. _____ WIDELOAD? ☐ Yes ☐ No

TRAILER VIN 1 _____

TRAILER VIN 2 _____

| TRAILER WIDTH(S) | 0 - 96" | 97 - 102" | > 102" |
| TRAILER 1 | ☐ | ☐ | ☐ |
| TRAILER 2 | ☐ | ☐ | ☐ |

TRAILER LENGTH(S) 1 _____ ft. 2 _____ ft.

TOTAL VEHICLE LENGTH _____ ft. NO. OF AXLES _____

CRASH LOCATION ☐ City of OR ☐ Nearest City
_____ MILES N E S W OR _____
(CIRCLE ONE)  City Name

SELECT CODES FROM THE BACK OF CRASH BOOKLET

VEHICLE CONFIG. ____ CARGO BODY TYPE ____ LOAD TYPE ____

ANY TRUCK OR BUS OPERATING AS CMV, GOVERNMENT ENTITY, OR RENTAL MAY QUALIFY UNDER THESE DEFINITIONS

EXHIBIT L

## SERVICE LIST

| City of Chicago | Chicago Park District | Officer Kanowski | Officer Mehmedagic, |
|---|---|---|---|
| Chicago City Hall | Chicago City Hall | Chicago City Hall | Chicago City Hall |
| 121 N La Salle | 121 N La Salle | 121 N La Salle | 121 N La Salle |
| Suite #107 | Suite #107 | Suite #107 | Suite #107 |
| Chicago, IL 60602 | Chicago, IL 60602 | Chicago, IL 60602 | Chicago, IL 60602 |

| The Edge Apartments | Ronald Duda |
|---|---|
| 5910 N. Sheridan Rd. | 5915 N. Kenneth Ave |
| Chicago, IL 60602 | Chicago, IL 60645 |